IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **STATE *ex rel.* STONEY HILL DEVELOPMENT, LLC,** <br> 3203 Oakwood Trail <br> Broadview Heights, Ohio 44147, <br><br> and <br><br> **STONEY HILL DEVELOPMENT, LLC,** <br> 3203 Oakwood Trail <br> Broadview Heights, Ohio 44147, <br><br> Plaintiffs, <br><br> -v- <br><br> **CITY OF WADSWORTH, OHIO,** <br> 120 Maple Street, <br> Wadsworth, Ohio 44281, <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT, MONETARY, INJUNCTIVE, AND OTHER RELIEF** <br><br> JURY DEMAND ENDORSED HEREON |

Now come Relator and Plaintiff, Stoney Hill Development, LLC ("Plaintiff"), by and through counsel, and for its Complaint against Defendant City of Wadsworth, Ohio ("City"), hereby allege and state as follows:

**INTRODUCTION AND NATURE OF ACTION**

1. Plaintiff files this action to redress violations of its fundamental constitutionally-protected property and civil rights by the City through its arbitrary, unreasonable, and land use regulations and course of conduct.

2. The City is unlawfully interfering with Plaintiff's attempt to lawfully use its real property, in violation of the Fifth Amendment of the United States Constitution, the Fourteenth

Amendment to the United States Constitution, Article I, Section 2, Article I, Section 19 of the Ohio Constitution, and Article I, Section 16 of the Ohio Constitution.

3. The City has acted arbitrarily, capriciously, and unconstitutionally by imposing unreasonable delays, requirements, and conditions on Plaintiff's ability to develop its Property, including but not limited to constantly changing requirements for approval, requiring excessive and costly studies, failing to disclose sewer information, requiring Plaintiff to pay for the cost of sanitary sewer flow testing over a period of months costing Plaintiff more than $18,000 to determine whether the City's own sanitary sewer system is currently at capacity, and also potentially spend amounts in excess of $600,000.00 to construct improvements to the City's sewer system, for the general benefit of the public and not just Plaintiff's benefit, prior to receiving approval for development.

4. The City's established course of conduct has shown no respect for the constitutionally protected property rights of Plaintiffs and other property owners in the City, and the City is attempting to force Plaintiff to bear sanitary sewer system costs that should be borne by the public as a whole.

## THE PARTIES

5. Plaintiff is a limited liability company duly organized under the laws of Ohio that owns certain real property known as Medina County, Ohio Permanent Parcel No. 033-12C-40-004[1] ("Property").

6. Defendant City of Wadsworth, Ohio is an Ohio municipality organized and existing under the laws of the State of Ohio.

---

[1] This parcel was subject to a lot split in June of 2022 and previously was a part of Parcel No. 033-12C-40-001.

5921111.2

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts and transactions complained of occurred, and continue to occur in this District.

10. There are no administrative remedies for Plaintiff to exhaust, attempting administrative remedies would be wholly futile, and/or the available administrative remedies, if any, would be onerous or unusually expensive.

## BACKGROUND

11. The Property consists of approximately 58 acres, more or less.

**A. Wastewater Management Background**

12. In terms of the wastewater management system, a significant portion of the Property is located within the Wadsworth Facility Planning Area ("FPA"), an area created by the Northeast Ohio Areawide Coordinating Agency ("NOACA"), which coordinates major transportation and utility projects in a five-county region as a part of the *Clean Water 2020:* 208 Areawide Wastewater Management and Water Quality Plan.

13. The City is the Designated Management Agency for the Wadsworth FPA, meaning that the City has "legal authority, managerial capacity, and financial resources to plan for wastewater conveyance and treatment for its FPA as designated in NOACA's 208 Plan."

14. The remainder of the Property is located in the Medina County FPA.

15. The relevant FPA boundaries are depicted below:



16. Upon information and belief, around 2017 or 2018, the Medina County Sanitary Engineers ("MCSE") proposed a modification of the Medina County FPA – Wadsworth FPA boundary in order to redirect the wastewater flow from Sharon Township, a portion of the City and eight parcels from Wadsworth Township to Medina County's sewerage system. Specifically, this proposal would have transferred 1,216 parcels (including the Property) from the Wadsworth FPA to the Medina County FPA. This FPA modification request would redirect the north lift station's wastewater flow from the Wadsworth Wastewater Treatment Plant ("WWTP") to the Medina County Liverpool WWTP with the support of Sharon Township and Wadsworth Township.

17. Upon information and belief, the City opposed this FPA modification, and represented to NOACA, Medina County, Sharon Township, Wadsworth Township and other

4

5921111.2

entities, that it had sufficient sewer capacity and ability to provide sanitary sewer to properties located along the southeastern border of Sharon Township, which included the Property.

18. As a result of the City's representations, Medina County and the City came to a compromised that transferred a majority of the parcels from Medina County's original proposal to the Medina County FPA, but kept several parcels, including the Property, in the Wadsworth FPA. NOACA approved this FPA modification. (*See* NOACA Resolution 2019-018.)

19. Upon information and belief, the City wanted to keep the Property in the Wadsworth FPA in order to profit from more revenue and fees for providing sanitary sewer service.

**B. Previous Development Attempt**

20. In 2018, a portion of the Property was planned to become a part of a development consisting of 64 unit single-family development on the north and west sides of the existing Weatherstone development.

21. As a part of this development, the City required the developer to evaluate the capacity and condition of the existing Weatherstone pumping station and downstream trunk sewer as a condition of sewer service. The area was also served by the Great Oaks Trail pumping station.

22. The diagram below depicts the current sewer system and shows the locations of the pump stations located to the south of the Property:



23. In February of 2018, the engineer on the project requested information from the City's engineering office regarding the current sewer system and pump station for Weatherstone and its downstream network, the engineer specifically requested information regarding the pumping capacity for the Great Oaks Trail pumping station.

24. The City represented to the engineer that it did not have those numbers.

25. As a result, the engineer produced a sewer capacity study dated September 14, 2018, and a revision to that study dated November 30, 2018, based on assumption regarding those numbers. The November 2018 revision in discussing the Great Oaks Trail Pumping Station, states "The City of Wadsworth indicated this pump station is maintained by the City. However, the City has no information readily available concerning the size or flow rate of the pumps."

26. For unknown reasons not relevant to this case, this development did not come to fruition.

5921111.2

C. **Development of the Property**

27. In early 2021, Plaintiff began working on plans to develop the Property.

28. Plaintiff sought to develop approximately 68 single family homes on the Property (the "Bailey Subdivision") in full compliance with the zoning of the Property. Chris Bailey, a representative of Plaintiff, was primarily in communication with the City officials with regard to this project.

29. The Property is located in Sharron Township, Medina County and all zoning issues are handled by the Township and all subdivision, planning and building requirements are handled by Medina County; however, since the Property is now part of the Wadsworth FPA, the City controls access to sewer, and without such the Property cannot be developed as legally permitted under the zoning.

30. The preliminary plan is depicted below:



*Figure 1: Concept Plan for the Bailey Subdivision as of July 2021*

31. The preliminary plans for the Bailey Subdivision called for 50 of the 68 homes to receive sewer service from the City collection system by the Weatherstone Pumping Station. The remaining 18 homes will receive sanitary service from Medina County's collection system.

7

5921111.2

32. In 2021, Plaintiff approached the City to request sewer service to serve the proposed 50 unit single-family development on the north side of the existing Weatherstone development.

33. The City informed Plaintiff that substantial upgrades were needed to the City's sewer system, and that Plaintiff was responsible for funding such upgrades.

34. After Plaintiff pushed back on the City concerning the need for upgrades, the City requested in June 2021 that Plaintiff perform a sewer capacity study and rejected Plaintiff's attempts at referencing the previous sewer capacity studies from 2018.

35. Plaintiff requested information from the City's engineering office necessary for the complete performance of the study regarding the current sewer system and pump station for Weatherstone and its downstream network, in particular, information regarding the pumping capacity for the Great Oaks Trail pumping station.

36. The City represented to Plaintiff that it did not have those numbers.

37. On July 12, 2021, Bailey emailed the City the updated sewer capacity study based on the current Bailey Subdivision Plan (the "July 2021 Sewer Capacity Study").

38. The July 2021 Sewer Capacity Study, under the section discussing the Great Oaks Trail Pumping Station, stated "The City of Wadsworth indicated this pump station is maintained by the City. However, the City has no information readily available concerning the size or flow rate of the pumps." As a result, the study used assumptions based on numbers from Weatherstone Pumping Station.

39. The July 2021 Sewer Capacity Study concluded as follows:

Based upon the study, the Weatherstone Pumping Station pumps and wet well have adequate capacity to receive flow from the proposed development. No improvements are recommended at the pump station to accommodate the additional sanitary flow. Seven spans of the downstream 10" diameter gravity trunk sewer are estimated to be near or

8

exceeding non-surcharged gravity flow capacity under existing peak flow conditions. However, if upstream development drains to the Weatherstone Pumping Station and the station remains in its current configuration, the proposed development will not increase the peak flow rate experienced by the downstream trunk due to the flow equalization effect of the pump station.

40. On July 29, 2021, the City's engineer responded to Bailey's email with an additional list of items to address, including that a new broader study of the FPA be performed to determine capacity.

41. Bailey offered the solution of moving the FPA line so that the Property was in the Medina FPA, and the City rejected this offer.

42. Sanitary sewers with capacity to provide sewer service to the Property exist adjacent to the Property in the Medina FPA, and Medina County has indicated they are more than willing to service the Property.

43. On November 3, 2021, Sharon Township approved Plaintiff's development plans.

44. On March 4, 2022, for the first time and after repeated requests to allow the development to proceed based off of Plaintiff's study, the City suddenly provided the peak flows calculations for the Great Oaks Trail pump station to Plaintiff's engineer, which was the same information that the City represented that it did not have in its possession.

45. When Plaintiff questioned why the City did not previously provide the peak flows calculations for the Great Oaks Trail pump station, the City represented to Plaintiff that such information was always available, despite the fact that Plaintiff and previous developers have requested such information from the City and were all informed that such information does not exist.

46. The new calculations provided by the City showed that the Great Oaks Trail pump station was already operating over capacity, even without the Bailey Subdivision.

47. Prior to the City agreeing to commit to accept the flow from the Bailey Subdivision, the City then indicated it required that Plaintiff prepare engineered plans at substantial cost to Plaintiff, and to have an engineer perform another study to verify the capacity in the sewers including the sewer to the Weatherstone pump station, the capacity at the Weatherstone pump station, and sewers downstream to the sewer crossing at the interstate.

48. Upon further discussions with the City, the City indicated that Plaintiff would be required to pay for the reconstruction of approximately 2000 feet of downstream sewer lines. This cost of this project was estimated to be between $400,000 and $600,000.

49. On April 1, 2022, the City sent a letter to Bailey requiring that Bailey conduct an additional flow monitoring study and provide designs for the problematic pinch point areas in order to receive approval of the development plans.

50. The addition of the Bailey Subdivision will have no negative impact on the City's sewer system, even if it is at capacity.

51. The City's delays, withholding of sewer information, constantly changing requirements, requirements for additional studies, and demands for improvements as conditions to the City agreeing to allow the Bailey Subdivision to tie into the sanitary sewer system (collectively referred to as the "Delays and Conditions") are unconstitutional.

52. The City has stifled development in the area because of the excessively burdensome Delays and Conditions imposed upon Plaintiff.

53. The City has refused to take action to allow the Property to be moved into the Medina FPA.

54. The City's engineering department, which manages the Wadsworth FPA, has a history of causing delay, moving the goal posts, changing position, stifling development, being unreasonable and intentionally difficult to work with to receive development approval.

55. In reaction to the City's engineering department's policy and custom of arbitrarily stifling development and interfering with property rights, at the November 28, 2022 meeting of City Council as a Whole, numerous property owners and developers attended and voiced objections and concerns over the City's engineering department arbitrary and capricious positions as it related to their individual and separate experiences.

## COUNT I

### (Taking – Ohio and Federal law)

56. Plaintiff incorporates all prior allegations contained in this Complaint as if fully rewritten herein.

57. The Delays and Conditions have a detrimental impact on Plaintiff's property rights.

58. An actual and justiciable controversy exists between Plaintiff and the City as to the requirement that Plaintiff conduct months of flow monitoring and/or install the sewer system as a precondition to get approval for the Bailey Subdivision.

59. The Takings Clause of the Fifth Amendment of the United States Constitution precludes a governmental entity from imposing unconstitutional conditions or unreasonably delays on the development of land.

60. The government may not leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts.

11

5921111.2

61. The City has deprived Plaintiff of its property and liberty interest in violation of the Due Process Clauses of the United States and Ohio Constitutions.

62. Plaintiff's property and liberty interests are of a type protected by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

63. Plaintiff is entitled to a declaration by this Court that the Delays and Conditions at issue are unconstitutional under the Ohio and United States Constitutions because there is no essential nexus between the legitimate state interest and the Delays and Conditions.

64. The character of the Delays and Conditions are unduly burdensome in their application to the Property to such an extent that it is a taking of Plaintiff's interest in the Property without just and reasonable compensation.

65. The City has a legitimate state interest in providing working sewer and sanitary systems for properties in the Wadsworth FPA.

66. The degree of the Delays and Conditions do not bear a reasonable relationship to the projected impact of the proposed Bailey Subdivision.

67. The cost of the Delays and Conditions far exceed the cost of sewer facilities necessary to accommodate the Bailey Subdivision.

68. The City is seeking to force Plaintiff to pay far greater than their proportionate share of improvements to the Wadsworth FPA.

69. The City is seeking to force Plaintiff upgrade the sewer system in the Wadsworth FPA.

70. There is no reasonable relationship or connection between the Delays and Conditions and the benefit to Plaintiff.

5921111.2

71. The Delays and Conditions are structured to accomplish purposes that are not reasonably related to any legitimate governmental purposes and not authorized by Ohio law.

72. The unduly burdensome Delays and Conditions deny Plaintiff the economically viable use of the Property and interfere with Plaintiff's reasonable investment-backed expectations.

73. An alternative method of accomplishing the legitimate governmental interest exists by allowing Plaintiff's Property to move to the Medina FPA.

74. Plaintiff is entitled to a declaration from this Court that the City's Delays and Conditions are an unconstitutional exaction.

75. Under Ohio Revised Code § 2721.03, Plaintiff is entitled to a declaration by this Court that the Delays and Conditions, as applied to the Property, constitute a taking, under Article I, Section 19 of the Ohio Constitution and the Fifth Amendment of the United States Constitution, for which Plaintiff is entitled to just compensation from the City in an amount to be determined at trial.

## COUNT II

**(Declaratory Judgment— Substantive Due Process– Ohio and Federal law)**

76. Plaintiff incorporates all prior allegations contained in this Complaint as if fully rewritten.

77. An actual and justiciable controversy exists between Plaintiff and the City as to the Delays and Conditions.

78. Under Ohio Revised Code § 2721.03, Plaintiff is entitled to a declaration by this Court that the Delays and Conditions at issue are unconstitutional under the Ohio Constitution and United States Constitution because the Delays and Conditions, as applied to the Property, are

5921111.2

arbitrary and unreasonable and without substantial relation to the public's health, safety, morals, or general welfare.

79. Under Ohio Revised Code § 2721.03, Plaintiff is entitled (a) a declaration from this Court that the Delays and Conditions are unconstitutional as applied under the Ohio Constitution, and (b) an Order from this Court directing the City's attempts to continue to impose the Delays and Conditions on Plaintiff are improper and to proceed to require the City to either conduct the necessary studies to determine whether the City's sanitary sewers are already at capacity or apply to move the Property into the Medina FPA.

## COUNT III

### (Mandamus)

80. Plaintiff incorporates all prior allegations contained in this Complaint as if fully rewritten.

81. Under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Ohio Constitution, Plaintiff has a clear right to receive compensation from the City for taking its property by conditioning development of the Property on payment of excessive Delays and Conditions.

82. The City has deprived Plaintiff of its property rights by unconstitutionally imposing the unduly burdensome Delays and Conditions in a manner that constitutes a taking.

83. By depriving Plaintiff of its property rights, the City has diminished the Property's value. This value will not be restored until the City removes the unduly burdensome Delays and Conditions for development of the Property or enacts another means of funding the sanitary sewer improvements in a constitutional manner.

84. As compensation, Plaintiff is entitled to recover the amount by which the City diminished the Property's value.

85. The City is under a clear legal duty to commence appropriation proceedings so that the Court can determine the amount of compensation the City must pay for the Property's taking.

86. Plaintiff has no plain and adequate remedy in the ordinary course of law to require the City to compensate it fairly for the losses that it has incurred and will continue to incur for the City taking the Property.

## COUNT IV

### (Injunctive Relief)

87. Plaintiff incorporates all prior allegations contained in this Complaint as if fully rewritten.

88. By imposing the unconstitutional Delays and Conditions on the Property, the City has violated and will continue to violate Plaintiff's right to substantive due process, under the Ohio Constitution and United States Constitution.

89. Unless this Court enjoins the City from continuing to impose the Delays and Conditions, the City will continue to interfere with Plaintiff's constitutionally protected property rights, causing irreparable harm to Plaintiff, for which Plaintiff has no adequate remedy and law.

90. Plaintiff is entitled to temporary and permanent injunctive relief enjoining the City from imposing the unconstitutional Delays and Conditions on the Property.

## COUNT V

**(42 U.S.C. Section 1983)**

91. Plaintiff incorporates all prior allegations contained in this Complaint as if fully rewritten.

92. The City deprived Plaintiff of its property and liberty interests under color of law without substantive due process of law, procedural due process of law, equal protection of law, and without just compensation all in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

93. Plaintiff's property and liberty interest are of a type protected by the Fifth and Fourteenth Amendments to the United States Constitution.

94. The City's violation of Plaintiff's substantive due process, due process, and Fifth Amendment just compensation rights arose as a direct consequence of the policy and custom of the City, including but not limited to the policy and custom of forcing developers to pay the costs of ensuring adequate sanitary sewer service and interfering with development and property rights in the Wadsworth FPA.

95. The City's actions were taken in bad faith and were arbitrary, capricious, willful, and in violation of controlling law.

96. Plaintiff has no adequate remedy at law to secure relief from the City's actions.

97. As a direct and proximate result of the City's violation of Plaintiff's constitutional rights, Plaintiff has been damaged in an amount to be determined at trial but believed to be in excess of $1,000,000.00, and will continue to suffer damage, as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following:

A. The Court enter a declaratory judgment order declaring that the City's Delays and Conditions are unconstitutional exactions;

B. The Court enter a declaratory judgment order declaring the Delays and Conditions unconstitutional as applied to the Property;

C. The Court enter an order notifying the City that it must finance the sanitary sewer lines servicing in a constitutional manner within a reasonable period of time not to exceed 60 days after such order;

D. The Court enter a declaratory-judgment order under Ohio Rev. Code Chap. 2721 declaring that the City's imposition of the Delays and Conditions constitutes a taking as defined by the United States and Ohio Constitutions;

E. The Court award damages to Plaintiff against the City for the violations under 42 U.S.C. Section 1983 in an amount to be determined at trial but believed to exceed $1,000,000.00.

F. The Court issue a writ of mandamus under Ohio Rev. Code Chap. 2731 directing the City to institute an eminent domain proceeding pertaining to the Property so that the City will appropriate the Property and pay Plaintiff just compensation in an amount that a jury determines at trial for damages;

G. The Court preliminarily and permanently enjoin the City from depriving Plaintiff of its constitutional property rights and from imposing the Delays and Conditions on the Property.

H. The Court award Plaintiff all costs incurred in this action, including but not limited to reasonable attorneys' fees under 42 U.S.C. Section 1983, and any other relief as the Court may deem equitable, just, or proper.

Respectfully submitted:

*/s/ Anthony R. Vacanti*
John P. Slagter (0055513)
Anthony R. Vacanti (0080834)
Danielle M. Easton (0099591)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Phone:  216-592-5000
Fax:  216-592-5009
Email: John.Slagter@tuckerellis.com
          Tony.Vacanti@tuckerellis.com
          Danielle.Easton@tuckerellis.com

*Attorneys for Plaintiff*

5921111.2

**DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action on all issues so triable.

/s/ *Anthony R. Vacanti*
John P. Slagter (0055513)
Anthony R. Vacanti (0080834)
Danielle M. Easton (0099591)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Phone: 216-592-5000
Fax: 216-592-5009
Email: John.Slagter@tuckerellis.com
         Tony.Vacanti@tuckerellis.com
         Danielle.Easton@tuckerellis.com

*Attorneys for Plaintiff*

5921111.2